IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN GHOLSTON ) | |
| ) | CASE NO. 1:15CV182 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Benjamin Gholston's ("Plaintiff" or "Gholston") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*, is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits in March of 2012. (Tr. 19, 64, 75). Plaintiff alleged he became disabled on October 1, 2010, due to back and leg pain. (Tr. 62, 70). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 68, 76, 90, 102).

At Plaintiff's request, administrative law judge ("ALJ") Penny Loucas convened an administrative hearing on July 15, 2013 to evaluate his application. (Tr. 37-61). Plaintiff,

1

represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Lynn Smith, also testified by phone. (*Id.*).

On August 28, 2013, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 19-30). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy prior to March 12, 2013, and that he was not under disability at any time through June 30, 2012, the date last insured. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 14). The Appeals Council denied the request for review, making the ALJ's February 22, 2012 determination the final decision of the Commissioner. (Tr.

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

1-3). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II. EVIDENCE

### A. Personal Background Information

Plaintiff was born on November 20, 1959, and was 50 years old on the alleged onset date. making him a "person closely approaching advanced age" for Social Security purposes. (Tr. 62); 20 C.F.R. § 416.963(d). Plaintiff had past relevant work as a truck driver. (Tr. 67). Plaintiff testified that he completed the twelfth grade in school. (Tr. 57).

### B. Medical Evidence - Mental Impairments[2]

Plaintiff presented to the emergency room on November 16, 2011, with complaints of chest pain with cold sweat and trouble breathing. (Tr. 289). Medical records stated the episode occurred while Plaintiff was in court, that he had experienced similar pain on previous occasions, and that the pain had subsided by the time he got to the emergency room. (*Id.*). Physical examination revealed primarily normal findings, although cardiac testing showed coronary artery disease. (Tr. 289, 291). At a follow-up appointment two days later, Plaintiff informed the clinic physician, Avnish Gill, M.D., that he had an anxiety problem and at times had been depressed, and noted his recent cardiac incident occurred at a time when he was very anxious and stressed. (Tr. 284). Dr. Gill diagnosed Plaintiff with anxiety state, unspecified, and noted he would benefit from a psychiatric referral for behavior modification assistance, but that the referral was not urgent. (Tr. 285). Medical records for treatment for Plaintiff's physical impairments

---

[2] The following recital is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record. Plaintiff's challenges to the ALJ's findings relate only to his mental impairments. Accordingly, this summary focuses on medical evidence relating to Plaintiff's mental condition during the relevant period, although the record includes evidence pertaining to Plaintiff's physical and mental impairments.

3

consistently referred to the incident as a transient ischemic attack, but noted on two occasions that Plaintiff stated he was told at the time that he did not have a stroke, but rather an anxiety attack. (Tr. 249, 257, 337, 364, 367, 395, 403). Although Plaintiff occasionally stated he had concerns about stress and reported sleep disturbance, psychiatric findings from medical visits related to Plaintiff's physical condition were generally negative and normal, including treatment notes stating he had no anxiety or feelings of depression. (Tr. 258, 290, 352, 368, 379, 404, 464, 473, 493, 504).

On January 26, 2012, Plaintiff was seen by Cristina Sander, CNP with multiple concerns and to establish care. (Tr. 272). Along with physical complaints, Plaintiff stated he had anxiety and stress due to everyday life, including legal problems over a previous DUI, foreclosure on his home, and the closing of his business. (Tr. 272-73). However, treatment notes indicated Plaintiff was not interested in a mental health treatment referral. (Tr. 273).

Plaintiff was referred to David House, Ph.D., for a psychological consultative examination on August 17, 2012. Examination notes stated Plaintiff had never been to a psychiatric hospital and was not currently taking medication, but that he told Dr. House he had some counseling a long time ago, and was given an unknown medication at that time to help him sleep. (Tr. 435). Plaintiff expressed that he stopped working as a motor freight owner-operator two years prior after he had an "attack." (*Id.*). Dr. House reported Plaintiff got along with his family, that Plaintiff had only one friend because the rest were deceased, and that he sometimes attended church but did not volunteer in his community because he "can't do what [he] want[s] to." (Tr. 434).

On mental status examination, Dr. House noted Plaintiff, when asked about impulsivity, stated he tried to think before he did things, and he described his energy level as "worn out."

4

(Tr. 435). Plaintiff described irregular sleep patterns and stated he felt depressed the last few years, and that he had thoughts of suicide, but never formulated any plans. (Tr. 435-36). Plaintiff reported multiple panic attacks and recounted post-traumatic stress from a near-fatal car accident and finding a deceased friend, about which he had nightmares and flashbacks. (Tr. 436). Dr. House recorded that Plaintiff stated he had trouble with organization, was forgetful, and exhibited mood swings. (*Id.*).

Dr. House found Plaintiff was oriented for person, place, time, and situation, but that he exhibited a pace that was "a bit slow," inconsistent persistence, and that he had difficulty completing the examiner's tasks. (Tr. 436). After performing some simple number, memory, and interpretive testing, Dr. House opined Plaintiff likely had "some lacunae in his intellectual functioning." (Tr. 436-37). Plaintiff reported he attended many medical appointments, spent time watching television, and was able to use the computer for games and social media. (Tr. 437). Plaintiff further told Dr. House that he lived alone, will cook but sometimes burns things, is able to drive but does not currently drive much, and that a friend did most of the cleaning, laundry, and grocery shopping. (*Id.*).

After examination, Dr. House provided a functional assessment, noting diagnoses of mood disorder, NOS and post-traumatic stress disorder, and assigned Plaintiff a GAF of 41, "based on serious impairment in concentration and attention along with depersonalization and some thoughts of death along with serious impairment in employability." (Tr. 431, 438). Dr. House noted Plaintiff had some difficulties in long and short term memory, but that he was capable of following multi-step directions to some degree. (Tr. 431). Dr. House opined that Plaintiff's memory difficulties also affected his concentration and attention, causing serious impairment in concentration "based on the metrics that are cited in the body of the report." (*Id.*).

Regarding interactions with others, Dr. House determined Plaintiff did not demonstrate any major difficulties, and observed that Plaintiff cooperated with the examiner, viewed as an authority figure. (*Id.*). However, Dr. House also noted Plaintiff described himself as socially isolated. (*Id.*). As to limitations in responding appropriately to work pressures, Dr. House again noted that Plaintiff demonstrated significant disruptions in concentration and attention, which he opined was caused at least in part by stress. (*Id.*). He added that Plaintiff's "emotional resources and coping skills are not at a high level currently and he is very likely to be disruptive and dysfunctional in a work environment, likely simply not showing up." (*Id.*).

On September 1, 2012, Deryck Richardson, Ph.D., reviewed the evidence and completed a mental residual functional capacity assessment. Dr. Richardson acknowledged Plaintiff's affective disorders and anxiety-related disorders, but that his impairments did not meet or equal a Listing. (Tr. 96). Dr. Richardson further assessed, due to these conditions, Plaintiff had moderate limitations relating to activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace, and that Plaintiff had no repeated episodes of decompensation. (*Id.*).

Specifically, Dr. Richardson opined Plaintiff was moderately limited in understanding and remembering detailed instructions, but that he retained the ability to perform simple, one to two step tasks, as well as some multi-step tasks. (Tr. 99). He determined Plaintiff could carry out short and simple instructions, as well as perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, but moderately limited in his abilities to carry out detailed instructions and maintain attention and concentration for extended periods. (*Id.*). Dr. Richardson explained that Plaintiff was able to attend to tasks in an environment that does not contain frequent interruptions and does not require him to perform

6

prioritizing tasks. (*Id.*). Further, although he had moderate limitations in his abilities to interact appropriately with the public, as well as to accept instructions and criticism from supervisors, Dr. Richardson opined Plaintiff retained the ability to interact with co-workers and supervisors on a superficial level, but that he required limited contact with the general public. (Tr. 100). Finally, Dr. Richardson stated that, due to moderate limitations in responding to changes in the work setting, Plaintiff required direction as to what was expected of him in performing the job. (*Id.*).

### C. Hearing Testimony

Plaintiff testified before the ALJ at the hearing held on July 15, 2013. (Tr. 37-61). At that time, Plaintiff offered no testimony relating to his mental impairments. (*Id.*). Plaintiff testified he was unable to work due to chronic back and leg pain following an injury while serving in the military in 1981. (Tr. 42-43). According to Plaintiff, his physical impairments kept him from holding a regular job, and forced him to become self-employed as a truck driver in 2002. (Tr. 45). Plaintiff testified he had previously experienced a stroke, and that he suffered physical side effects from his pain medication, including nausea, dizziness, and increased heart rate. (Tr. 54-55). He further stated the pain medication was only partially effective in alleviating his pain. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. Since the alleged onset date of disability, October 1, 2010, the claimant has had the following severe impairments: osteoarthritis in the cervical spine, arthralgia, left should rotator cuff tendinitis, mood disorder and anxiety. Beginning on the established onset date of disability, March 12, 2013, the claimant has had the same severe impairments and the additional impairment of adhesive capsulitis in left shoulder.

4. Since the alleged onset date of disability, October 1, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that prior to March 12, 2013, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404,1567(b) and 416.967(b) with unlimited balancing.  Other limits include frequent climbing of stairs and ramps.  The claimant can frequently kneel.  He can rarely crawl.  All other postural are occasional.  He is limited in overhead reaching and lifting with non-dominant left arm to occasionally.  He should avoid all hazards and not climb ladders, ropes or scaffolds.  Mentally, he can perform unskilled and semi-skilled work.  The claimant retains the ability to attend to tasks in an environment that does not contain frequent interruptions, and so long as he is not expected to prioritize his tasks.  He can interact rarely with general public.  He can interact with co-workers and supervisors.  He is limited to routine type changes.

6. After careful consideration of the entire record, the undersigned finds that beginning on March 12, 2013, the claimant has the residual functional capacity to perform sedentary work with unlimited balancing.  Other limits include frequent climbing of stairs and ramps. The claimant can frequently kneel.  He can rarely crawl.  All other postural are occasional.  He is limited in overhead reaching and lifting with non-dominant left arm to occasionally.  He should avoid all hazards and not climb ladders, ropes or scaffolds.  Mentally, he can perform unskilled and semi-skilled work.  The claimant retains the ability to attend to tasks in an environment that does not contain frequent interruptions, and so long as he is not expected to prioritize his task[s].  He can interact rarely with general public.  He can interact with co-workers and supervisors.  He is limited to routine type changes.

7. Since October 1, 2010, the claimant has been unable to perform any past relevant work.

8. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  The claimant's age category has not changed since the established disability onset date.

9. The claimant has at least a high school education and is able to communicate in English.

10. Prior to March12, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  Beginning on March 12, 2013, the claimant has not been able to transfer job skills to other occupations.

11. Prior to March 12, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

8

12. Beginning on March 12, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

13. The claimant was not disabled prior to March 12, 2013, but became disabled on that date and has continued to be disabled through the date of this decision.

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2012, the date last insured.

(Tr. 21-29) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

### 1. The ALJ's RFC is supported by substantial evidence

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. §§ 404.1545, 416.945; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578, (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1527(e)(1)). Thus, it is ultimately the ALJ's responsibility to analyze the medical opinion evidence and determine a Plaintiff's RFC. While there may be evidence supporting a more restrictive RFC assessment, the ALJ's ruling must be upheld where adequate evidence supports it. *See Mullen*, 800 F.2d at 545.

Prior to her RFC analysis, the ALJ acknowledged Plaintiff's serious impairments of mood disorder and anxiety, but determined these impairments did not meet or medically equal

the severity of any of the Listings. (Tr. 22-23); 20 C.F.R. Part 404, Subpart P, Appendix 1. In her Listings analysis, the ALJ gave a detailed overview of the findings of Dr. House, a mental health consultative examiner, which included observations and determinations relating to Plaintiff's work-related abilities, as well as general social functioning and activities of daily living. (Tr. 22-23). The ALJ reported the records of Dr. House showed Plaintiff's persistence was "somewhat inconsistent and he had difficulty completing the examiner's tasks," and that Dr. House opined Plaintiff's concentration, persistence and pace were "seriously impaired." (Tr. 22, 436). Further, the ALJ noted Dr. House's opinion that Plaintiff was capable of following multi-step directions "to some degree," but that he would likely be disruptive and dysfunctional in the work environment by not showing up. (Tr. 22, 431). While acknowledging Plaintiff's self-report that he was socially isolated, the ALJ also referenced Dr. House's observation that he did not demonstrate any major difficulties interacting with others, noting he had a friend that helped with household chores, maintained an adequate relationship with his family, and occasionally attended church. (Tr. 22).

The ALJ stated she gave the opinion of Dr. House partial weight. Explicitly rejecting only the portion of the opinion stating Plaintiff had serious impairments in his concentration, persistence, and pace, the ALJ reasoned that it was not clear what Dr. House meant by "serious impairment." (Tr. 22). Immediately following her review of his opinion, the ALJ determined:

> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings…: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation….

(Tr. 22-23).

11

Plaintiff argues that the ALJ's RFC assessment, which immediately followed her Listing analysis described above, did not account for these moderate findings and was not supported by substantial evidence.  The undersigned disagrees.   In the RFC analysis, the ALJ acknowledged Plaintiff suffered from anxiety attacks, but also noted Plaintiff "was not interested in a psych referral" and that he testified he had not worked for several years due to a main problem of pain.  (Tr. 23-25).  She additionally considered the opinion of the reviewing, non-examining state agency psychological consultant, Dr. Richardson, whose opinion she assigned some weight, reasoning that his limitations seemed inconsistent with his narrative.  (Tr. 27).  However, she gave full credit to Dr. Richardson's assessment that Plaintiff "can attend to tasks in an environment that does not contain frequent interruptions and does not require prioritizing tasks," finding this consistent with the record.  (Tr. 27, 88).  The RFC explicitly provided for these limitations with almost identical language.  (Tr. 23).

The ALJ's RFC assessment, along with her assessment of the opinion of Dr. House in the Listing analysis immediately prior to the RFC analysis, undermines Plaintiff's argument that the ALJ did not adequately articulate the basis for her RFC determination.  An ALJ's decision must be sufficiently specific so as to allow a subsequent reviewer to follow the ALJ's reasoning, and to determine on what evidence her findings are based.  See *Hurst v. Sec. of Health & Human Servs.*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); see *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428 (6th Cir. 1999) ("[A]n ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes.").  Here, although the ALJ did not restate her discussion relating to the opinion of Dr. House in her RFC analysis, the Listing analysis was sufficient to demonstrate her interpretation Dr. House's opinion relating to Plaintiff's work-related limitations.  See *Forrest v.*

*Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 365-66 (6th Cir. 2014) (upholding ALJ's step three findings where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion) (*citing Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to 'spell out every fact a second time.'")); *see generally Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 466 (6th Cir. 2005) (stating reasons for ALJ's analysis of a medical source's opinion may be identified from the ALJ's analysis of that condition generally). The ALJ summarized in detail the observations and findings of Dr. House, explained the weight given to his opinion, and then stated her reasonable determination that Plaintiff had moderate limitations, a finding that was supported by the evidence of record. (Tr. 22-23). She then went on to conduct her RFC analysis, incorporating the additional evidence of record relating to Plaintiff's mental health limitations, including the opinion of Dr. Richardson. This Court is not convinced by Plaintiff's unsupported allegation that the ALJ's finding of moderate limitations, after a full analysis of the opinion of Dr. House, followed by additional analysis and formulation of Plaintiff's mental RFC incorporating relevant limitations, is insufficient to follow the ALJ's reasoning, or to determine on what evidence she relied in formulating the RFC.

The Court also rejects Plaintiff's argument that the findings of the ALJ are internally inconsistent. Plaintiff offers one example in support of the alleged inconsistencies, asserting that the ALJ's finding that Plaintiff had moderate restrictions in social functioning was inconsistent with the RFC that found him capable of rare interaction with the general public, and no limitation in interacting with co-workers or supervisors. In support, however, Plaintiff offers no evidence or authority to explain how the ALJ's findings are inconsistent with "moderate"

limitations in social functioning. Accordingly, this Court finds no merit in Plaintiff's unfounded assertion of error.

Plaintiff also fails to demonstrate to the Court that the RFC does not sufficiently address Plaintiff's moderate limitations. "[An] ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). After reasonably finding Plaintiff's limitations were of a moderate severity, the ALJ formulated the mental RFC to include the following: Plaintiff was limited to unskilled or semi-skilled work that did not require him to prioritize his tasks; Plaintiff required an environment that did not contain frequent interruptions and had only routine type changes; and, while Plaintiff was able to interact with co-workers and supervisors, he could only rarely interact with the public. (Tr. 23). Plaintiff fails to provide any evidence or authority showing that these limitations do not account for his moderate work-related limitations, including his lack of major difficulty interacting with others, inconsistent persistence and some difficulty completing tasks, while still being able to follow multi-step tasks "to some degree." (Tr. 22-23); s*ee generally Mathews v. Eldridge*, 424 U.S. 319, 336 (1976) (Plaintiff has the burden of establishing his entitlement to disability benefits).

Further, even assuming *arguendo* that the ALJ erred by not providing a sufficient explanation in the RFC analysis, remand is nonetheless not appropriate because the deficiency would be considered harmless error. An error may be harmless where it does not "prejudice[] a claimant on the merits or deprive[] the claimant of a substantial right." *Snoke v. Astrue*, No. 2:10-cv-1178, 2012 WL 568986, at *5 (S.D. Ohio Feb. 22, 2012) (*quoting Rabbers v.Comm'r of*

14

*Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (*quoting Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007))). Plaintiff has the burden of showing that the alleged error was not harmless. *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp. 2d 822, 827, fn. 1 (N.D. Ohio 2010) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'") (*quoting Shinseki v. Sanders,* 129 S. Ct. 1696, 1706 (2009)). For the reasons described below, Plaintiff has failed to meet this burden and show evidence that would justify remand. *See Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 520 (6th Cir. 2011) ("[A]n error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because there is [no] reason to believe that [it] might lead to a different result.'") (*quoting Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)).

Plaintiff alleges that the ALJ did not provide an adequate RFC analysis, and that the determined RFC is "far-reaching, in stark contradiction to the facts," and does not account for Plaintiff's moderate limitations. (Pl. Brief p. 11). However, Plaintiff fails to point to any evidence on the record that supports these assertions, or to show the overall decision was not supported by substantial evidence. *See generally Dykes v. Barnhart,* 112 Fed. App'x 463 (ALJ's failure to explicitly articulate reasons for rejecting opinion of consultative examiner harmless error because "the fundamental question for [the reviewing] court is whether the ALJ's decision is supported by substantial evidence."). First, it is not clear from either the evidence on the record, or from Plaintiff's argument, what limitation Plaintiff believes was not accounted for by the RFC. Next, Plaintiff does not provide any authority that supports his assertion that the RFC did not adequately account for the moderate limitations as articulated by the ALJ. Finally, Plaintiff does not point to any specific evidence that was overlooked, or was not considered, by the ALJ in rendering her decision. *See generally Rudd,* 531 Fed. App'x at 728 (an RFC is

determined based on the ALJ's evaluation of both medical and non-medical evidence). Accordingly, even if the ALJ's manner of articulation was flawed, Plaintiff has not shown that any such error would warrant remand. *See Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp. 2d 497, 502 (N.D. Ohio 2008) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") *(citing Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006))

2. **The ALJ conducted a proper analysis of Dr. House, a non-treating, consultative examiner**

Plaintiff also argues that the ALJ improperly evaluated the findings and opinion of one-time psychological examiner Dr. House. (Tr. 19). Plaintiff argues that, after reciting the findings of Dr. House, she improperly rejected his findings and did not explain the weight she assigned to his opinion.

The regulations provide that the ALJ must evaluate every medical opinion in the record and, unless giving a treating physician's opinion controlling weight, should explain the weight given to the opinion of medical sources while considering the factors set out in the regulations. 20 C.F.R. §§ 416.927(c), (e)(2)(ii) and 404.1527(c), (e)(2)(ii). These factors include the examining relationship, treatment relationship, length of the treatment relationship and frequency of examination, supportability, consistency, and specialization. 20 C.F.R. §§ 416.927(c)(1)-(6) and 404.1527(c)(1)-(6). An ALJ is not bound by any findings made by any state agency program physicians or psychologists, including psychological consultants. 20 C.F.R. §§ 416.927(e)(2)(i) and 404.1527(e)(2)(i).

Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996).

Plaintiff's argument that the ALJ erred in failing to give good reasons for rejecting the opinion of Dr. House fails on various grounds. First, Plaintiff's assertion that the ALJ did not address the weight given to the opinion of Dr. House, and that she "presumably reject[ed]" Dr. House's findings and conclusions, is incorrect on its face. The ALJ explicitly stated she gave the opinion "partial weight," and clearly explained why she did not credit Dr. House's finding of a serious impairment. Further, her subsequent determination that Plaintiff exhibited moderate restrictions in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, and pace, are consistent with the opinion of Dr. House (with the exception of the "serious impairment" finding), undermining Plaintiff's assertion that the opinion was wholly rejected.

Second, the "good reasons" requirement providing the basis of Plaintiff's argument applies only to a treating source. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (*quoting Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007)) (finding the procedural "good reasons" requirement under the treating source rule "only applies to *treating*

17

sources."). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation for [the] medical condition." *Smith*, 482 F.3d at 876. As Dr. House evaluated Plaintiff on one occasion, at the request of the agency, he is clearly an examining, but not a treating, source. *Id.* at 875 ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' the claimant.") Thus, Plaintiff's reliance on the "good reasons" requirement of the treating source rule (and its corresponding case law) is misplaced.

Finally, contrary to Plaintiff's assertion, the ALJ properly analyzed the opinion of Dr. House under the guidelines projected by the Regulations. It is well established that, even where the ALJ is not required to give treating source deference to a medical source, she is still required to explain the weight given the opinion, considering the factors as described in the Regulations. *Ealy*, 594 F.3d at 514 (*citing* 20 C.F.R. 404.1527(d)). When evaluating a non-treating but examining source, "the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Id.* Here, the ALJ acknowledged that Dr. House, referred to as a Ph.D. psychologist, had the chance to perform a one-time consultative examination. (Tr. 22). As described in the preceding section, the ALJ gave a detailed summary of the findings of Dr. House, as well as the observations and evidence on which he relied in formulating his opinion. (*Id.*). Giving the opinion partial weight, the ALJ specifically discredited Dr. House's findings of a "serious impairment" due to a lack of clarity as to the underlying meaning of the terminology. Although the ALJ did not expressly refer to the other mental health evidence on the record

(which, as the government points out, was very limited) until the following section of the decision, the RFC made clear that Dr. House's report was considered in coordination with such evidence.

Accordingly, this Court rejects Plaintiff's argument that the ALJ committed prejudicial error in failing to give good reasons for rejecting the opinion and report of Dr. House, a non-treating, consulting psychological examiner.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  March 30, 2016.